**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JERALD RIDEAUX #191355** | § | |
| | § | |
| **V.** | § | **A-25-CV-01340-ADA** |
| | § | |
| **LT. B. McINTYRE, et al.** | § | |

<u>ORDER</u>

Before the Court are Plaintiff Jerald Rideaux's complaint (ECF #1) and more definite statement (ECF #7). The Court granted Plaintiff leave to proceed *in forma pauperis*. For the reasons discussed below, the Court dismisses Plaintiff's complaint.

<u>STATEMENT OF THE CASE</u>

At the time he filed his complaint, Plaintiff was incarcerated in the Jefferson County Correctional Facility in Beaumont, Texas. Plaintiff complains of his previous confinement in Kyle, Texas.

According to Plaintiff, "Lt. B. McIntyre blatantly stole [his] non profit & authored documents while father tried to manufacture a health document. Susanna Martinez, Warden Witorik & others failed to follow all state probation/parolees laws concerning 1B/4C protocol. Also, they allowed laws to be broken without investigating grievances & I-60's that were written & [] turned into the courts." Plaintiff sues Lt. B. McIntyre, Warden T. Witorik, Grievance Officer Huerta, IPTC Manager Susanna Martinez, all the staff at the Kyle Correctional Center, MTC Staff Members and Company, and TDCJ. He seeks $10 million and wants state laws looked at more seriously concerning centers and probationers.

1

After consideration of Plaintiff's complaint, the Court ordered Plaintiff to file a more definite statement. Plaintiff explains in August and September of 2024, he started writing a book titled "Resilient Thoughts" to help individuals understand more concisely on how to mentally be more in tune with all aspects of life. He claims that, on August 8, 2024, he wrote his first piece titled "Thought Contradiction" to help humans focus more on being precise with their judgment without causing unnecessary turmoil within themselves. After finishing the piece, he asserts he allowed MTC Officer Shrane to read it while she was on duty. She allegedly commended Plaintiff on how unusual and great the piece was. Plaintiff states, a few days later, he allowed Lt. B. McIntyre to read it since she and Plaintiff both understood the magnitude of how serious Plaintiff was about life. Plaintiff asserts he gave McIntyre "Thought Contradiction" along with two other pieces he had written titled "Wake Up Sensibly ?" and "Quote of the Day." Plaintiff claims McIntyre never returned the written pieces to him. According to Plaintiff, Officers Shrane, Garcia, and Costenetta, Warden Witorik, and Ms. Ybarra were aware but did nothing to rectify the matter.

Plaintiff alleges he gave I-60's and grievances to Warden Witorik complaining of (1) McIntyre's failure to return his documents, (2) neglectful, prejudiced, and unethical practices MTC Counselor Smith and Program Director Susanna Martinez have towards probationers, (3) the mail lady, and (4) the law librarian. Relatedly, Plaintiff complains Ms. Huerta, "the person over grievances," was not persistent in working to obtain the documents McIntyre failed to return or dealing with his other grievances regarding MTC workers.

Plaintiff further alleges Martinez showed a prejudice dealing with probationers. According to Plaintiff, Martinez denied probationers a chance to go home upon finishing the SAFPF program but allowed parolees to go home. He explains, if a facility is at least 55 miles from your physical

address, you are supposed to be allowed to go home.  He further explains, if you do not have an address, you are supposed to go to a halfway house of the person's choosing.  According to Plaintiff, the failure to follow protocol caused a displacement of residents who were sometimes shipped six to eight hours away from their county of residence.  Plaintiff asserts he "diligently tried working with the counselors who truly had no experience or knowledge but denied the truth due to power thrustings."  Plaintiff also complains that counselors at the Kyle Unit chose to speak with probation officers whether it was warranted or not and violated IPTC policy and HIPAA laws.  Plaintiff claims everyone is liable becusae of "knowledge of incidents without following statutes and guidelines for the IPTC or State of Texas."[1]

DISCUSSION AND ANALYSIS

1.    <u>Legal Standard</u>

When an inmate seeks redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.  *See Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998) (*per curiam*).  If a plaintiff is proceeding IFP, his complaint is also subject to screening under § 1915(e)(2).  Both statutes provide for *sua sponte* dismissal of a complaint—or any portion thereof—if the Court finds it frivolous or malicious, if it fails to state a claim upon which relief can be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

---

[1] The Substance Abuse Felony Punishment Facility (SAFPF) / In-Prison Therapeutic Community (IPTC) provide services to qualified offenders identified as needing substance use treatment. Both are six-month in-prison treatment programs followed by up to three months of residential aftercare in a transitional treatment center* (TTC), six to nine months of outpatient aftercare and up to 12 months of support groups and follow-up supervision. A nine-month in-facility program is provided for special needs offenders who have a mental health and/or medical needs, as qualified. Offenders are sentenced to a SAFPF by a judge as a condition of community supervision in lieu of prison/state jail, or voted in by the Board of Pardons and Parole (BPP) BPP as a modification of parole. See https://www.tdcj.texas.gov/divisions/rpd/substance_abuse.html

3

A complaint is frivolous if it lacks an arguable basis in law or fact, i.e., when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009) (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999)). A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard requires more than the mere possibility that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556.

All well–pleaded facts are taken as true, but the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Although "detailed factual allegations," are not required, "more than an unadorned, the–defendant–unlawfully–harmed–me accusation" is. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id.* And although a court must construe a pro se's allegations liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), a plaintiff's pro se status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

4

2.    Section 1983

Section 1983 provides a cause of action to individuals whose federal rights have been violated by those acting under color of state law. *Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). Section 1983 is not itself a source of substantive rights; rather, it merely provides a method for vindicating federal rights conferred elsewhere. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). In order to state a claim under Section 1983, a plaintiff must (1) allege a violation of rights guaranteed by the United States Constitution or federal law, and (2) demonstrate the alleged deprivation was committed by a person acting under color of state law. *Doe*, 153 F.3d at 215.

3.    TDCJ

The Eleventh Amendment generally divests federal courts of jurisdiction to entertain suits directed against states. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury. *Green v. State Bar of Tex.*, 27 F.3d 1083,1087 (5th Cir. 1994). To the extent Plaintiff sues TDCJ the Court lacks jurisdiction.

4.    Grievances

Plaintiff complains his grievances were not resolved by prison staff. The Fifth Circuit has held that prisoners have no constitutional rights in the inmate grievance process. *Alexander v. Tex. Dep't of Crim. Just.*, 951 F.3d 236, 240 (5th Cir. 2020) (citing *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (holding a prisoner "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction."). Accordingly, Plaintiff's claims regarding his grievances fail to state a claim for relief.

5.    Violation of Policies

Plaintiff alleges counselors spoke to probation officers in violation of IPTC and/or HIPAA laws.  Plaintiff's claims fail.  Plaintiff fails to identify what IPTC policy was violated or how counselors violated HIPAA.  Moreover, the Fifth Circuit has held that HIPAA, which provides civil and criminal penalties for improper disclosure of medical information, lacks an express provision creating a private cause of action, nor is one implied within the statute.  *Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006) ("We hold there is no private cause of action under HIPAA and therefore no federal subject matter jurisdiction over Acara's asserted claims").  Rather, only the Secretary of Health and Human Services can enforce the statute.  *Id.* (citing 42 U.S.C. § 1320d-5).  In addition, "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met."  *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (quoting *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)).  Plaintiff fails to explain how his constitutional rights were violated when counselors at the IPTC allegedly spoke to Plaintiff's probation officer.

6.    Lost Property

Prisoners have a cognizable constitutionally protected property interest in their personal property.  *See Eubanks v. McCotter*, 802 F.2d 790, 793–94 (5th Cir. 1986).  Nevertheless, under the *Parratt/Hudson* doctrine, "a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate post[-]deprivation remedy."  *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quotation marks and citations omitted).  The Texas administrative and judicial systems allow prisoners to raise ordinary tort claims such as conversion

or an administrative remedy for lost or damaged property. *See Cathey v. Guenther*, 47 F.3d 162, 164 (5th Cir. 1995); *Spurlock v. Schroedter*, 88 S.W.3d 733, 737 (Tex. App.--Corpus Christi 2002). Because Plaintiff has an adequate post-deprivation remedy under Texas law in that he has the right to sue for conversion in state court, he does not have a Section 1983 due process claim for loss of his personal property.

       7.    <u>Equal Protection</u>

Plaintiff appears to raise an equal protection claim when he alleges probationers are treated differently than parolees. To state an equal protection claim, "a § 1983 plaintiff must either allege that (a) a state actor intentionally discriminated against him because of membership in a protected class, or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 238 (5th Cir. 2012) (cleaned up).

Plaintiff does not allege he is in a protected class. Plaintiff complains probationers are not treated the same as prisoners who have been granted conditional parole upon the completion of a program. He asserts probationers should be treated like parolees and be allowed to go home upon finishing the SAFPF program. However, probationers are not similarly situated to parolees. Parolees have served their prison time and are being allowed by the Parole Board the opportunity to continue serving their sentence while on parole. Probationers on the other hand are ordered to complete the program as part of their probation. Plaintiff's equal protection claim fails as a matter of law.

CONCLUSION

Plaintiff's claims against TDCJ are barred by sovereign immunity. Plaintiff's remaining claims are frivolous or fail to state a claim upon which relief can be granted.

It is therefore **ORDERED** that Plaintiff's claims against the TDCJ are **DISMISSED WITHOUT PREJUDICE** for want of jurisdiction.

It is further **ORDERED** that Plaintiff's complaint is **DISMISSED WITH PREJUDICE** as frivolous or failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e).

It is finally **ORDERED** that the Clerk of Court shall e-mail a copy of the Court's order and judgment to the keeper of the three-strikes list.

SIGNED on October 20, 2025.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE